UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ANDREW CHMIELINSKI
        Plaintiff,

v.

COMMONWEALTH OF MASSACHUSETTS,
OFFICE OF THE COMMISSIONER OF
PROBATION and COMMONWEALTH OF
MASSACHUSETTS TRIAL COURT and
JOHN J. O'BRIEN, INDIVIDUALLY and
ANTHONY J. SICUSO, INDIVIDUALLY,
        Defendants.

CIVIL ACTION
05-11418-NMG

## MOTION TO DISMISS THE COMPLAINT PURSUANT TO FED. RR. CIV. P. 12(b)(1), (6) FOR LACK OF SUBJECT MATTER JURISDICTION AND FAILURE TO STATE A CLAIM FOR RELIEF

Pursuant to Fed. RR. Civ. P. 12(b)(1), (6), all Defendants move to dismiss the Complaint

in the above-captioned matter for lack of subject matter jurisdiction and failure to state a claim.

As more fully argued below:

- ▸    The Commonwealth is not a "person" for §1983 purposes and cannot be sued thereunder.

- ▸    The Complaint fails to allege a deprivation of due process, and therefore states no claim against any Defendant.

- ▸    Under the "Rooker" doctrine, the Court is without subject matter jurisdiction of this claim.

- ▸    Under the "Parret-Hudson" doctrine, the Complaint states no claim.

- ▸    The Eleventh Amendment bars this action against the Commonwealth and Commonwealth entities.

- ▸    The Complaint is barred by the *Parret-Hudson* doctrine.

- ▸ The Commonwealth and the Trial Court Department enjoy sovereign immunity from this claim under the 11th Amendment. Moreover, they are not "persons" for §1983 purposes, and cannot be sued thereunder.

- ▸ The individual Defendants acted in quasi-judicial functions and therefore enjoy the absolute immunity accorded judges.

- ▸ The individual defendants enjoy qualified immunity as a matter of law, because they did not deprive Plaintiff of a clearly-established right..

- ▸ The individual defendants enjoy qualified immunity as a matter of law, because they were engaged in the type of discretionary governmental acts to which such immunity applies.

## FACTS ALLEGED

This is an action under 42 USC, §1983 for the wrongful termination of Plaintiff Andrew Chmielinski, in violation of his due process rights. Complaint ¶1.

Plaintiff had been a Probation Officer with the Massachusetts Trial Court since 1979 when, on April 15, 2003, Defendant Sicuso – Deputy Commissioner/Legal Counsel of the Office of the Commissioner of Probation, ¶8 – informed him in writing of his supervisors' dissatisfaction with his work performance and allegations of his misconduct. Complaint ¶¶9, 15. On May 16, 2003, Chmielinski was placed on administrative leave with pay, ¶16, and was informed by Defendant Sicuso that the allegations against him appeared plausible. ¶16.

Also on May 16, 2003, Defendant Sicuso ordered Plaintif, among other things:

- •      to stay away from Milford District Court and cease contact with any of its employees or former employees;

- •      to surrender immediately all keys and passes; and

- •      refrain from all intimidating/retaliatory behavior.

¶16.

The "Trial Court/Office of the Commissioner of Probation," ¶17, conducted an "unfair" investigation into the allegations, ¶17, based on hearsay. *Id*. Regional Supervisor Elizabeth Slaney drafted the report of the investigation, *id*., which was prepared at Defendant Sicuso's direction and under his supervision. *Id*.

After they received the Report,"Officials of the Trial Court/Office of the Commissioner of Probation conducted further investigation of the allegations against Plaintiff Chmielinski to determine the charges to be filed against Plaintiff." ¶18. Among the charges were an incident of shoplifting at a Stop & Shop on September 12, 2002. ¶18.

On May 16, 2003, Defendant Sicuso placed Mr. Chmielinski on involuntary administrative leave with pay, even though, Plaintiff alleges, "the allegations had not yet been proved." ¶16. "As a condition of Plaintiff's administrative leave," he agreed to have no further contact with then-present or former Milford District Court employees, *id*., which deprived him of the ability to conduct his own investigation into the charges. *Id*

Defendants then conducted their own investigation, ¶¶ 16, 17, which was improper, biased, full of hearsay and totem pole hearsay, predetermined in outcome, etc. ¶17. It contained an allegation that Plaintiff had been detained for shoplifting on September 12, 2002, ¶18, to which incident Plaintiff admits, but contends was due to medications and pain-killers immediately after a surgery of unspecified date and nature. ¶18. Although Plaintiff was not "arrested," *id*., nor a complaint filed, *id*., the police "placed Mr. Chmielinski in protective custody due to his impaired state." *Id*.

On September 4, 2003 Mr. Chmielinski was notified of the six charges against him: the shoplifting incident; falsely obtaining a "blue light" permit; providing his brother with court

activity record information; creating an appearance of impropriety over his brother's speeding ticket; a four-year-old charge of carrying a firearm on duty; and improprieties with other court employees.

The Commissioner terminated Mr. Chmielinski on February 20, 2004,. ¶23, though he found in his favor "on some of the charges." *Id.* As discussed below, Plaintiff "appealed" (Plaintiff's word, ¶24) his termination to Chief Justice Mulligan. On August 19, 2004, the Chief Justice "denied Plaintiff Chmielinski's Appeal and upheld the decision of the Commissioner of Probation." ¶24.

As was his statutory right pursuant to G.L. c. 211B, §8, ¶25, Plaintiff then finally appealed, on November 19, 2004, in person as statutorily permitted, to the Advisory Committee on Personnel Standards of the Trial Court (the Committee), comprised, among others, of the Chief Justices of all the Trial Court departments.

Plaintiff alleges that he was deprived of due process.

## ARGUMENT

I.    **THE COMPLAINT FAILS TO ALLEGE A DEPRIVATION OF DUE PROCESS, AND THEREFORE STATES NO CLAIM AGAINST ANY DEFENDANT.**

In analyzing a §1983 claim, the first question is "whether plaintiff's harm was caused by a constitutional violation." *Collins v. City of Harker Heights, Texas*, 503 U.S. 115, 120 , 112 S.Ct. 1061, 1066 (1992). If the answer is "no," the analysis stops there and the Complaint is dismissed.

### A.    Plaintiff Did Not Sustain A Constitutional Injury

In determining, as it must first do, the legal sufficiency of an alleged due process deprivation, *Collins*, 503 U.S. at 120 , 112 S.Ct. at 1066, the Court focuses on the amount of process due. *Id*.

The process due a pretermination employee is "some kind of hearing and some pretermination opportunity to respond." *Wojcik v. Mass. State Lottery Commission*, 300 F.3d 90, 101-02 (1st Cir. 2002). (Citations omitted).  "In general, `something less' than a full evidentiary hearing is sufficient prior to adverse administrative action. *Moody v. Town of Weymouth*, 805 F.2d 30, 33 (1st Cir. 1986), quoting  *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 1495 (1985).  "The pretermination hearing need only be 'an initial check against mistaken decisions.'" *Wojcik*, 300 F.3d at 102, quoting  *Loudermill*, 470 U.S. at  542. [1] [2]

Plaintiff was terminated on February 20, 2004. ¶23. His pretermination hearing occurred on January 12, 2004, ¶20, "conducted by [Defendant] Commissioner of Probation John J. O'Brien on behalf of the Trial Court/Office of the Commissioner of Probation." *Id*.  He complains, among other things:

---

[1]This is the short answer to the allegation, ¶16, that Mr. Chmielinski was placed on administrative leave with pay, "although the allegations had not been proved."

[2]Note that there is no requirement that the hearing reach a "correct" decision, but merely to serve as an "initial check" on mistake. "It has been settled that [the Fourteenth] amendment does not assure immunity from judicial error or uniformity of judicial decisions." Indeed*,* "[t]he Fourteenth Amendment does not, in guaranteeing equal protection of the laws, assure uniformity of judicial decisions any more than in guaranteeing due process it assures immunity from judicial error." *"Riley v. Worcester County Trust Co.*,  89 F.3d 59, 66 (1937), quoting  *Milwaukee Electric Ry. & Light Co. v. Wisconsin*, 252 U.S. 100, 106, 40 S.Ct. 306, 309 (1920) (string citation omitted).

1.    that this was his only hearing[3]

2.    that the hearing was flawed by numerous procedural errors, none of which were later correctable[4]

3.    that witnesses did not testify under oath;[5]

4.    that hearsay testimony came in;[6]

5.    that he was denied discovery, etc[7]

These arguments are irrelevant to the constitutional violation inquiry  because due process requires none of the above.  E.g., "[a] state agency need not apply the Federal Rules of Evidence to comport with the requirements of the due process clause. It is well established that hearsay evidence is admissible in administrative proceedings if it is relevant.".*Beauchamp  v. Abadia, et al.,* 779 F.2d 775 (1st Cir. 1985). Nor does the Massachusetts Administrative Procedures Act require state agencies to observe the rules of evidence. "General Laws c. 30A, §11(2), provides:  '[u]nless otherwise provided by any law, agencies need not observe the rules of evidence observed by courts.'" *In re Segal*, 430 Mass. 359, 364 n.7 (1999).

Plaintiff received all the pretermination process that was constitutionally due him, and states no claim for due process deprivation.  *Wojcik*, 300 F.3d  at 101-02;  *Moody*,  805 F.2d at 33; Loudermill, 105 S.Ct. at 1495.

---

[3]More precisely, he complains that this was "only opportunity" "to present evidence on his behalf other than through oral argument or written argument, the evidence conclusions or findings of the" Board. ¶21.

[4]¶22. Plaintiff's own appeals directly contradict this assertion.

[5]¶22[a]

[6]¶22[b], [h], [i], [l],

[7]¶22[d]

Nor is there a constitutional right to discovery in judicial or quasi-proceedings.*Matter of Tobin*, 417 Mass. 81, 87 (1994). That right derives from state law and rules.[8]

### B.      Plaintiff Received Substantially More Process Than He Was Constitutionally Due.

Due process is not an opportunity to appeal one's grievance until some judicial reviewing panel gets it "right." "The Due Process Clause 'is not a guarantee against incorrect or ill-advised personnel decisions.'" *Collins v. City of Harker Heights, Tecas*, 503 U.S. 115, 129, 112 S.Ct. 1061, 1070 (1992). Plaintiff received extraordinary state judicial review of his termination, which was affirmed by state judges all the way up the line as far as he went.[9]. He had much more than the process due him; he simply disagrees with the - - unanimous - - results.

By letter of March 1, 2004, ¶24, Plaintiff appealed the Commissioner's termination decision, *id*, to Hon. Judge Robert Mulligan, *id*., the CJAM. *Id*. Chief Justice Mulligan affirmed the Commissioner's decision on August 19, 2004. *Id*.

Next, as provided by statute, Plaintiff's termination was automatically appealed to the Advisory Committee on Personnel Standards of the Trial Court (the Committee). ¶25.[10] To this

---

[8]But see, *id*., observing that there is authority that an agency cannot deny discovery where such denial would work a deprivation of due process. However, there is no allegation here that Defendants forbade discovery. The keep-away-from-Milford-Court-order, inconvenient as it may have been, was not a ban on all discovery, and could most probably could have been gotten around, by court order, if nothing else, on a showing of necessity. There is no allegation Plaintiff did this, or made any discovery efforts whatsoever, whether or not denied.

[9]As discussed below, he could, and should, have gone further.

[10]As Plaintiff himself alleges, ¶25, and as mandated by statute, the Advisory Committee is composed of : "the chief justice for administration and management or his designee who shall serve as chair of the committee, the chief justices of the trial court departments, a clerk of courts, a district court clerk and a register of probate, all of whom shall be designated by said chief justices and the commissioner of probation."

committee of jurists, Mr. Chmielinski exercised his statutory right to make his own oral

argument. ¶25; G.L. c. 211B, §8.

On November 19, 2004, the Committee of judges voted to affirm Chief Justice

Mulligan's denial of Plaintiff's appeal of the Commissioner's decision. *Id*. On November 23,

2004, Chief Justice Mulligan so informed Plaintiff's attorney. Plaintiff's attorney *Id*.

In other words, Plaintiff had at least as many levels of judicial process as Massachusetts -

- or any other state, as well as the federal court system -- makes available to most court litigants,

except that he appeared before considerably more judges, not to mention two court clerks and a

Register of Probate. . He states no claim for deprivation of due process, his disagreements with

the Commissioner's fairness, hearsay and other evidentiary rulings, procedural flaws, etc. -- all

as unanimously affirmed by many judges -- notwithstanding.

### C.    Plaintiff's Appeal To This Court is Barred For Lack of Subject Matter Jurisdiction Under the "Rooker" Doctrine.

Although he did not prevail at any stage, Plaintiff had his full state remedy. The

"Rooker/Feldman" doctrine bars his appeal to this Court.

It is a "relatively non-controversial principle that only the Supreme Court has jurisdiction

to review decisions of state courts." *Wilson v. Shumway*, 264 F. 3d 120, 124  (1st Cir. 2001).

This is the well-known Rooker Feldman doctrine. *Rooker v. Fidelity Trust Co.*, 263 U.S. 413

(1923). In *Rooker*, plaintiff had sought a declaration in the U.S. District Court D..H. nullifying

all judgments of the Indiana state courts for violation of the due process, equal protection, and

---

G.L. c. 211B, §8.

contract clauses of the federal constitution. The Rooker Court affirmed the District Court,

holding, "[u]nder the legislation of Congress, no court of the United States other than this court

could entertain a proceeding to reverse or modify the judgment [of a state court] for errors of that

character." *Rooker*, 263 U.S. at 416. In short, the lower federal courts are without jurisdiction to

review state court decisions. Wilson, 264 F.3d at 124, citing *Feldman*, 460 U.S. at 462.

There is no jurisdiction in this Court to review the state decision, and the Complaint

should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).

### D.     Plaintiff Did Not Exhaust His State Judicial Remedies

"It is well-settled that a 'claim of lack of available due process fail[s] on the merits

[where] there [is] a process available under state law.'" *Boston Environmental Sanitation*

*Inspectors Association,* v. *City of Boston*, 794 F.2d 12, 13 (1ˢᵗ Cir. 1986), citing *Limerick v.*

*Greenwald*, 749 F.2d 97, 99 (1st Cir.1984).

The Supreme Judicial Court of Massachusetts exerts plenary power not only over the

Courts of the Commonwealth, G.L. c. 211, §3, but over the CJAM's decisions as well, where

such decisions adversely impact the administration of justice.

> [g]eneral superintendence also shall not include the authority or
> power to exercise or supersede any of the powers, duties and
> responsibilities of the chief justice for administration and
> management, as established by section one of chapter two hundred
> and eleven B, in any general or special law except under
> extraordinary circumstances leading to a severe, adverse impact on
> the administration of justice;  provided, that the majority of the
> supreme judicial court shall issue a written order that sets forth the
> basis for a finding that, absent such action, there would be a severe
> and adverse impact on the administration of justice in the
> commonwealth.

G.L. c. 211,§3 (emphasis added).

As a matter of law, Mr. Chmielinski was deprived of nothing; unless and until the SJC rejected any contention that the termination adversely impacted upon Massachusetts justice, he might have obtained the relief sought..

### E.    The Complaint is barred by the Parret Doctrine.

The First Circuit summarizes the Parret-Hudson as follows.

> When a deprivation of a property interest is occasioned by random and unauthorized conduct by state officials, the Supreme Court has repeatedly emphasized that the due process inquiry is limited to the issue of the adequacy of the postdeprivation remedies provided by the state.

*Hadfield v. McDonough*, 407 F. 3d 11, 19 (1st Cir. 2005).

A "random and unauthorized act" has occurred when a government official "misapplies state law to deny an individual due process under the correct application of state law." *Id* at 20..

> In other words, conduct is "random and unauthorized" within the meaning of *Parratt-Hudson* when the challenged state action is a flaw in the official's conduct rather than a flaw in the state law itself...but for *Parratt-Hudson,* "federal suits might be brought for countless local mistakes by officials in administering the endless array of state laws and local ordinances").

*Id*, citing *Cronin v. Amesbury*, 81 F. 3d 257, 260 (1st Cir. 1996)(per curiam), which rejected an employee's due process claim directed not at sufficiency of pretermination procedures but at the conduct of government officials applying the procedures.

Identically, Plaintiff complains of the Commissioner's conduct of the hearing, not that the legal procedure is itself insufficient to provide him with his due process rights. Under the *Parret* doctrine, cannot sue for the various mistakes he alleges state officials made in a process he does not challenge as insufficient.

The Complaint should be dismissed in its entirety.

**II.    THE COMMONWEALTH AND/OR ITS AGENCIES AND OFFICIALS
ENJOY SOVEREIGN IMMUNITY FROM THE COMPLAINT, ARE NOT
"PERSONS" UNDER §1983, AND ARE NOT ANSWERABLE FOR THE
ACTS OF THEIR EMPLOYEES.[11]**

**A.    The Eleventh Amendment Bars the Complaint As Against the Two
State Entities.**

"The Supreme Court has consistently held that the Eleventh Amendment protects an

unconsenting state from suits brought by her own citizens as well as citizens of other states."

Forte v. Sullivan, 935 F.2d 1, 2 (1st Cir. 1991).

> For over a century we have reaffirmed that federal jurisdiction
> over suits against unconsenting States "was not contemplated by
> the Constitution when establishing the judicial power of the United
> States."

Seminole Tribe of Florida v. Florida, 116 S.Ct. 1114, 1122 (1996), quoting, Han v. Louisiana,

134 U.S. 1, 33 (1890), and citing, Edelman v. Jordan, 414 U.S. 651, 652-653 1974); Pennhurst

State School and Hospital v. Halderman, 465 U.S. 89, 97-100 (1984); Rodriguez-Garcia v.

Davila, 904 F.2d 90, 98 (1st Cir. 1990).[12]

"This immunity extends to any entity that is an arm of the state." *Wojcik v. Mass. State

Lottery Commission*, 300 F. 3d 90, 99 (1st Cir. 2002) (string cite omitted).

---

[11]As a threshold matter, it is long-settled there is no *respondeat superior* liability in
§1983. "[A] governmental entity may not be held liable under 42 U.S.C. §§ 1983 for
constitutional violations committed by its employees unless the plaintiff's injury results from
either an officially sanctioned policy or from a custom or practice that is so well-settled and
widespread that the policymaking officials can be said to have either actual or constructive
knowledge of it yet did nothing to end the practice." *Hancock v. Sheriff*, 354 F.3d 57, 59-60 (1st
Cir. 2003). The Complaint states no claim against the state entities for the alleged conduct of the
individual Defendants.

[12]Massachusetts has not waived its sovereign immunity for 11th Amendment purposes.
*Irwin v. Commissioner of the Dept. of Youth Services*, 388 Mass. 810, 819, 821 (1983).

It is beyond dispute that the Massachusetts Trial Court and its Office of the

Commissioner of Probation are Massachusetts entities and arms of the state, established at G.L.

c. 211B, §1. The Eleventh Amendment bars the suit against these two Defendants, and the

Complaint against them should be dismissed for lack of subject-matter jurisdiction.

**B.      The State Entities are Not "Persons" for §1983 Purposes, and Cannot Be Sued Thereunder.**[13]

It is long settled that a state is not a "person" for purposes of 42 U.S.C. § 1983 and is

therefore not amenable to suit thereunder.  Will v. Michigan Dept. of State Police, 491 U.S. 58,

71 (1989); Forte v. Sullivan, 935 F.2d 1, 2 n.2 (1st Cir. 1991).[14] A §1983 suit against a state

entity is a suit against the state, and cannot be maintained.

Any contention that Plaintiff may nevertheless proceed against the state entities because

he is seeking injunctive relief is unavailing; no injunction can issue if the Complaint states no

claim, or there is no jurisdiction of the subject matter.

**C.      Commissioner O'Brien and Deputy Commissioner Sicuso Enjoy Absolute, Quasi-Judicial, as Well as Qualified Immunity From These Claims**

It is  "too well settled to require discussion, that every judge, whether of a higher or lower

court, is exempt from liability to an action for any judgment or decision rendered  in the exercise

of jurisdiction vested in him by law." LaLonde v. Eissner, 405 Mass. 207, 210 (1989); Allard v.

Estes, 292 Mass. 187, 189-190, 197 N.E. 884 (1935).  This means that whether their acts are

---

[13]Injunctive relief not available b/c P. mstates no claim on which injunction can issue.

[14]The statute forbids any "person," under color of state law, from depriving any person within the jurisdiction of the United States of rights, privileges or immunities secured by the federal constitution or laws of the United States.  Will, 491 U.S. at 61 n. 1.

alleged to have been erroneous, malicious, corrupt, in excess of authority or flawed by grave

procedural error, judges are immune from civil liability.  Stump v. Sparkman, 435 U.S. 349, 356,

357, 359 (1978); Malachowski v. City of Keene, 767 F.2d 704, 710 (1st Cir. 1986) (applying the

doctrine to judges of state courts of limited jurisdiction). The only exception occurs where the

judge acts "in the clear absence of all jurisdiction."  Malachowski, supra, 767 F.2d at 710;

Stump, supra, 439 U.S. at 357.

The doctrine of absolute judicial immunity extends to persons, other than judges, who

perform judicial or quasi judicial functions.  See, e.g., *Imbler v. Pachtman*, 424 U.S. 409,

430-431, 96 S.Ct. 984, 995-996, (1976) (prosecuting attorneys); *Demoran v. Witt*, 781 F.2d 155,

157-158 (9th Cir.1986) (probation officer preparing presentence reports);  *Burkes v. Callion*, 433

F.2d 318, 319 (9th Cir.1970), cert. denied, 403 U.S. 908, 91 S.Ct. 2217, (1971) (probation officer

and court-appointed psychiatrists).  Courts have expanded the doctrine of absolute judicial

immunity to include these "quasi judicial" officers because they are involved in an integral part

of the judicial process and thus must be able to act freely without the threat of a law suit.

*Robichaud v. Ronan*, 351 F.2d 533, 535-538 (9th Cir.1965).

"The functional approach taken in immunity cases ... requires an analysis of the nature of

the duties performed, and whether they are closely associated with the judicial process." *Cok v.*

*Consentino*, 876 F.2d 1, 3 (1st Cir. 1989) (internal quotation omitted). Thus, a guardian ad litem,

"who typically gathers information, prepares a report and makes a recommendation to the court

regarding a custody disposition," *id*., is absolutely, quasi-judicially immune from suit. *Id*.

The Defendant Commissioner's function was equally grave if not more judicial, since he

is empowered to hold the first-instance hearing, hear the evidence and argument, and make the

initial determination on a petitioner's future and livelihood. He certainly fulfills at least the function of an administrative law judge. On the allegations of the Complaint, he is entitled to absolute, quasi-judicial immunity, and the action should be dismissed as against him.

When acting at a judge's direction, these "quasi judicial" officers enjoy the same absolute immunity for their conduct. *Temple v. Marlborough Div. of the Dist. Court Dep't*, 395 Mass. at 133, 479 N.E.2d 137 (court clerk).

The allegations necessarily imply that Defendant Commissioner/Legal Counsel Sicuso conducted the allegedly flawed investigation at the direction of the Commissioner for purposes of Plaintiff's case before him, including but not limited to Plaintiff's hearing and any judicial appeals that might follow. Because he acted at the behest of a quasi-judicial officer in the exercise of that officer's judicial function, Defendant Sicuso enjoys the same, absolute, quasi-judicial immunity as does the Commissioner, and cannot be sued in connection with his duties, regardless of the allegations against him. The Complaint as against Defendant Sicuso should likewise be dismissed for his absolute, quasi-judicial immunity.

Qualified immunity "shields 'public officials from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.'" *Fabiano v. Hopkins*, 352 F.3d 447, 452-53 (1st Cir. 2003), quoting *Anderson v. Creighton*, 483 U.S. 635, 638, 107 S.Ct. 3034 (1987). As discussed above, Plaintiff does not allege deprivation of a cognizable right, whether or not clearly established. For the same reason he states no claim for relief, the individual defendants enjoy qualified immunity.

## CONCLUSION

For the above reasons, the Complaint should be dismissed in its entirety, as against all Defendants, with prejudice, for lack of subject matter jurisdiction and/or failure to state a claim, pursuant .to Mass. RR. Civ. P. 12(b)(1), (6).

All Defendants,
By Their Attorney,

_____/s/_____
Stephen Dick BBO #560508
Assistant Attorney General
Trial Division/Gov't. Bureau
1 Ashburton Place
Boston MA 02108
(617) 727-2200 x3324
fax 617-727-2076
stephen.dick@ago.state.ma.us

Dated: March 13, 2006