UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05-11418-NMG
_____

**ANDREW CHMIELINSKI**
Plaintiff

v.

**COMMONWEALTH OF MASSACHUSETTS
OFFICE OF THE COMMISSIONER OF PROBATION
and COMMONWEALTH OF MASSACHUSETTS
TRIAL COURT and JOHN J. O'BRIEN, INDIVIDUALLY
and ANTHONY J. SICUSO, INDIVIDUALLY**
Defendants

_____

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS

**Introduction**

Plaintiff Andrew Chmielinski, through counsel, hereby opposes the Motion to Dismiss filed by Defendants in this action.

In their motion to dismiss, Defendants set forth a number of grounds for the dismissal of the Complaint in this action. The grounds for the motion to dismiss may be summarized as follows: 1) the complaint should be dismissed as to all Defendants, as Plaintiff has not adequately alleged a deprivation of his due process rights, and the action being complained of is an action of a "state court"; 2) the complaint should be dismissed as to the governmental entity Defendants (the Commonwealth of Massachusetts Office of the Commissioner of Probation and the Commonwealth of Massachusetts Trial Court) as

1

actions under 42 U. S. Code section 1983 may not be maintained against them under a variety of theories, and; 3) the complaint against the individual Defendants (John J. O'Brien and Anthony Sicuso) should be dismissed as they are entitled to either absolute immunity from suit or qualified immunity from suit, either of which would supposedly protect them from Plaintiff's claims in this action.

Defendants' arguments are incorrect, and the motion to dismiss must be denied.

**Summary of Argument**

As is discussed in greater detail below, the motion to dismiss must be denied for the following reasons:

1. The individual Defendants were not acting in a judicial or quasi-judicial capacity in relation to their activities which form the basis for the complaint in this action, and they therefore do not enjoy absolute immunity from suit for violation of 42 U.S. Code section 1983.

2. The individual Defendants did not engage in activity which could reasonably be thought to be consistent with Plaintiff's Due Process rights, and they therefore do not enjoy qualified immunity from suit for violation of 42 U. S. Code section 1983.  They also did indeed deprive Plaintiff of a specific right, namely, his right to procedural due process of law.  The question of whether the actions of the individual Defendants could "reasonably" be believed to be consistent with Plaintiff's Due Process rights, is one more properly addressed at trial, or in the very least, in ruling upon a motion for summary judgment.  The issue of the "reasonableness" of Defendants' conduct is not properly dealt with in ruling on a motion to dismiss.

3. The governmental entity Defendants have been named as defendants in this action, and are necessary parties to this action, in order that Plaintiff may obtain full relief from the deprivation of his Constitutional rights should he prevail in this action.  Specifically, Plaintiff has alleged that as a result of the denial of his Due Process rights, his employment with the Office of the Commissioner of Probation ended.  In order for Plaintiff to obtain full relief in this action, Plaintiff would have to be reinstated to his position with the Office of the Commissioner of

    Probation.  Such equitable relief would only be possible if the governmental entity Defendants remain as defendants in this action, so that in appropriate circumstances the Court could order them to reinstate Plaintiff to his former position with his previous pay and benefits.

4. The so-called "Rooker doctrine" does not apply to this action, as the actions of Defendants at issue in this case are not "decisions of a state court."

5. The doctrine of exhaustion of remedies does not apply in this action, as there was no state judicial remedy available to Plaintiff of which he did not avail himself.  Plaintiff fully exhausted any state judicial remedies available to him.

6. The so-called "Parret-Hudson" doctrine does not bar the complaint in this action, as the "post deprivation" remedies available to Plaintiff to correct the actions of the state officials of which he complains (to the extent those officials engaged in "random and unauthorized" acts), are clearly inadequate.  Specifically, subsequent to the deprivation of his rights at the "hearing" resulting in the termination of his employment, Plaintiff had no further right to a hearing, solely a right to written and oral argument on appeal.  This was inadequate to protect his Due Process rights, or to correct the deficiencies of the improper "hearing."

## Argument

### I. Plaintiff's Due Process Rights Were Violated

Plaintiff has claimed in his complaint in this action that when a hearing was conducted in January 2004 regarding whether or not his employment should be terminated, the procedures engaged in during and in relation to that hearing were so unfair (on a number of specific grounds) that his Constitutional right to procedural Due Process of law was violated.

Prior to the hearing, Plaintiff had been informed that he was being suspended with pay pending a hearing regarding his possible termination of employment, and was eventually informed of the supposed reasons for that suspension and proposed termination.  Although Plaintiff was suspended with pay pending the result of the January 2004

hearing, he was not allowed to work after the suspension was initiated. Additionally, some of the actions constituting the deprivation of Due Process occurred in conjunction with the announcement of the suspension.

The caselaw regarding deprivations of due process in an employment context uses different phrases to refer to the timing of the "process" which may be due. In some cases, there is a discussion of the process which may be due "pretermination." This would appear to refer to termination of employment. See, e.g., Mard vs. Town of Amherst, 350 F. 3d 184, 192 (1st Cir. 2003). In other cases, there is a discussion of the process due "post deprivation." This would appear to indicate that whenever the employee may or may not have been terminated, the time period to be looked at relates to when the deprivation of rights occurred, not necessarily when the termination of employment occurred. See, e.g., Cronin vs. Town of Amesbury, 895 F. Supp. 375, 386 (D. Mass. 1995); affirmed, 81 F. 3d 257 (1st Cir. 1996).

The caselaw also distinguishes between the process which is due prior to termination, and the process which is due after termination (and presumably, after "deprivation," if the "deprivation" is not complete until termination).

In Mard vs. Town of Amherst, 350 F. 3d 184, 192 (1st Cir. 2003), the Court stated:

> "The Due Process Clause requires an opportunity to be heard…at a meaningful time and in a meaningful manner…In general, the state must provide some kind of hearing before depriving an individual of a protected property interest…This hearing need not be elaborate. Rather, where more comprehensive post-termination procedures are available, the pre-termination hearing need only provide an initial check against mistaken decisions.

4

> …
> The adequacy of this kind of limited, pre-termination hearing rests in part upon the availability of more rigorous post-deprivation procedures. As the Supreme Court explained in *Loudermill*, the existence of post-termination procedures is relevant to the necessary scope of pretermination procedures. Id. at 547 n.12, 105 S. Ct. 1487 (holding that a limited pretermination hearing was sufficient where it was followed by a more comprehensive post-termination hearing)."

See also, Cronin vs. Town of Amesbury, 895 F. Supp. 375, 385-387 and 389 (D. Mass. 1995); affirmed, 81 F. 3d 257 (1st Cir. 1996).

Clearly, whether the process accorded an individual during the "pretermination" and "predeprivation" period is constitutionally adequate, will be determined in large part by the nature of the "post termination" or "post deprivation" proceedings. The caselaw in this Circuit requires that the post-termination, post-deprivation hearing be more comprehensive than the pre-termination hearing. That was not the case in the dispute before this Court.

The complaint in this action presumed that the initial, pretermination hearing/process accorded to Plaintiff occurred when he met with Mr. Sicuso in May 2003 and was informed of his suspension, and later the reasons for his suspension. However, Defendants take the position in their motion to dismiss that the "pretermination" hearing was the one which occurred in January 2004.

In their motion at page 5, Defendants state the following:

> "Plaintiff was terminated on February 20, 2004. Par 23. His pretermination hearing occurred on January 12, 2004, par. 20, "conducted by [Defendant]

5

>Commissioner of Probation John J. O'Brien on behalf of the Trial Court/Office of the Commissioner of Probation."

Nowhere in the complaint does Plaintiff characterize the January 2004 hearing as being either "pretermination," "predeprivation," "postermination," or "post deprivation." That characterization is the creation of Defendants, and their motion to dismiss must be judged consistent with that characterization.

The complaint in this action does state (and Defendants do not take issue with this in their motion) that the January 2004 "hearing" was the only "hearing" conducted in relation to the termination of Plaintiff's employment. This was the only opportunity available to Plaintiff to present evidence on his behalf, or to question (other than through oral or written argument) the evidence presented against him. Complaint at par. 21. After the issuance of Defendant O'Brien's decision to terminate Plaintiff's employment, Plaintiff exercised his right to file a written appeal with the Chief Justice for Administration and Management of the Massachusetts Trial Court. Complaint at par. 23. The appeal was denied. Pursuant to MGL Chapter 211 section 8 as well as the Trial Court's Rules of procedure, in November 2004 Plaintiff presented oral argument to the Advisory Committee on Personnel Standards of the Trial Court, urging that his termination be overturned. Complaint at par. 25. The termination was upheld. No further process was available to Plaintiff.[1]

---

[1] As is discussed in greater detail below, Defendants claim that Plaintiff failed to exhaust his available judicial remedies as he did not ask the Supreme Judicial Court to "exercise" or "supercede" the "powers, duties and responsibilities of the chief justice for administration and management." Plaintiff asserts not only that this is not a "remedy" which Plaintiff was required to exhaust, and that it was a futile "remedy," but that in any

6

The shortfalls of the "pretermination" hearing Plaintiff attended (the January 2004 hearing) are many. As is set forth in the Complaint at par. 22, among other things, the testimony of witnesses was not taken under oath, Plaintiff was prevented from presenting an adequate defense as he had been precluded from engaging in discovery, the Hearing Officer (Defendant O'Brien) had the appearance of bias as he had lunch during the hearing with one of the attorneys representing Plaintiff's employer, and the outcome of the hearing appeared to be predetermined. Other procedural issues which might not in and of themselves constitute a denial of due process (such as the admission of hearsay and totem pole hearsay testimony, the admission of improperly obtained and improperly created evidence, the admission of biased testimony, the admission of evidence without proper authentication, the failure of the Hearing Officer to review the transcript of the hearing, and the failure to sequester witnesses), when viewed as a whole and in light of the more serious violations of Plaintiff's Due Process rights, contributed to the hearing as a whole not comporting with Plaintiff's Due Process rights.

Whether the January, 2004 hearing is viewed as a "pretermination" hearing or a "post-termination' hearing, Plaintiff was not accorded a fair hearing. Whether the deficiencies in the hearing rise to the level of a violation of Plaintiff's Due Process rights, depends upon the extent to which adequate and more comprehensive further process, and adequate and comprehensive further proceedings, were available to Plaintiff to correct these

---

event, it provides no more process to him, no more viable opportunity to present witnesses and evidence, than the other two post-deprivation avenues discussed above.

7

procedural errors.  No such adequate and more comprehensive further process was available to Plaintiff.

Plaintiff has complained that the inadequacies of the January 2004 hearing deprived him of the right, among other things, to engage in discovery, to have witnesses present sworn testimony against him, to have his hearing adjudicated by a Hearing Officer who did not have the appearance of bias, and to have the issues presented at his hearing determined other than in advance of the hearing.[2]  He has also complained that improper evidence was admitted.

However, as the only "process" allowed to Plaintiff after the January 2004 hearing was a series of oral or written appeals, rather than a "hearing" at which evidence and witnesses could be properly presented, the procedural defects of the January 2004 "hearing" could never adequately be corrected.  The minimal "process" afforded Plaintiff after the January 2004 hearing causes the inadequacies of the January 2004 hearing to be in violation of Plaintiff's Due Process rights.

---

[2] The Supreme Judicial Court in In The Matter of Robert H. Tobin, Sr., 417 Mass. 81, 87 (1994), that "there is authority for the proposition that an administrative agency must grant discovery to a party in a contested case regardless of whether the enabling statute or agency rules provide for it, if refusal to grant discovery would so prejudice the party as to amount to a denial of due process."  This is just that type of case.  Plaintiff desperately needed to be able to engage in discovery to be able to adequately defend against the charges brought against him by the office of the Commissioner of Probation.  Not only was he denied discovery in connection with the January 2004 hearing, but he was ordered by Defendant Sicuso, on pain of further and additional discipline, not to contact potential witnesses, thereby being completely denied the right to pre-hearing discovery.

The actions of Defendants served to deprive Plaintiff of Due Process of law in violation of his rights under the Fifth and Fourteenth Amendments to the Constitution.

**2. Absolute Immunity Does Not Apply to the Individual Defendants**

Defendants argue in their brief that Defendants O'Brien and Sicuso were functioning in a "quasi-judicial" manner and are therefore entitled to absolute immunity from suit. This argument fails, as neither Mr. O'Brien nor Mr. Sicuso were functioning in any such "quasi-judicial" capacity."

It is certainly true that Plaintiff was employed by an arm of the government of the Commonwealth of Massachusetts, the Office of the Commissioner of Probation, which is itself a part of the Trial Court. Mr. O'Brien and Mr. Sicuso were functioning as <u>supervisory</u> and <u>managerial</u> officials of their agency. They were performing <u>managerial</u> and <u>labor relations</u> functions, not <u>judicial</u> functions. Just because the agency for which they work is placed for administrative purposes within a larger branch of state government, the Trial Court, does not make their supervisory or managerial actions "judicial" or "quasi-judicial." If this argument were to be carried to its logical conclusion, none of the actions of any employees of the Office of the Commissioner of Probation would be subject to any of the labor or employment laws of either Massachusetts or the United States.

Just because the Office of the Commissioner of Probation is administratively a part of the Trial Court, does not confer absolute immunity from suit upon its employees as performing "quasi-judicial" functions.[3]

The individual Defendants, Mr. O'Brien and Mr. Sicuso, are not entitled to absolute immunity from suit.

**3. Qualified Immunity Does Not Apply to the Individual Defendants**

Defendants argue that if the individual defendants, Mr. O'Brien and Mr. Sicuso, are not protected form suit by absolute immunity for having performed "quasi-judicial" functions, then they should be entitled to qualified immunity from suit. The test, as explained by Defendants, is whether Defendants' actions "could reasonably be thought consistent with the rights they are alleged to have violated." No such reasonableness determination may be made at this point in this litigation, and therefore Defendants must be denied qualified immunity.[4]

---

[3] The case citations provided by defendants do not in any way support the "absolute immunity" argument. The cases involve individuals actually involved in the judicial process, not employees of a subdivision of the judiciary who are involved in non-judicial administrative functions, as is the case here. As a general matter, a functional approach is to be taken when immunity is alleged, and the job duties performed are to be analyzed to determine if they are "closely associated with the judicial process." Cok vs. Consentino, 876 F. 2d 1, 3 (1st Cir. 1989).

[4] The central question to be answered is whether "a similarly situated reasonable official would have understood that her conduct violated clearly established law." Fabiano vs. Hopkins, 352 F. 3d 447, 453 (1st Cir. 2003). However, on this issue it has been held that "since a reasonable public official is expected to know the law, our inquiry is nothing more than an examination whether the events at issue violated clearly established constitutional rights." Cronin vs. Town of Amesbury, supra at 389, citing Hall vs. Ochs, 817 F.2d 920, 924 (1st Cir. 1987).

As was discussed above, the right Plaintiff claims was violated by Defendants was his Constitutional right to procedural Due Process of law in relation to the hearing he had which resulted in the termination of his employment. The specific defects of which he complains (which are set forth in a prior section of this brief) were engaged in by Defendants O'Brien and Sicuso. The question to be answered is whether those actions could reasonably be thought consistent with Plaintiff's right to due process of law. They could not.

It is simply not consistent with Plaintiff's right to Due Process of law, for evidence against him to be improperly enhanced and improperly obtained (the shoplifting reports and arrest records), for witnesses to be allowed to testify against him without being sworn, for Plaintiff to be prevented form obtaining discovery on penalty of further disciplinary action (the "stay away" order), to have the result of his hearing be predetermined, to admit biased evidence, or for the Hearing Officer to give the impression of bias. No reasonable state official would have believed that these actions were consistent with Plaintiff's Due Process rights. Similarly, the lesser improprieties engaged in at the hearing (such as admission of hearsay and the failure to sequester witnesses) which taken as a whole serve to deny Plaintiff his Due Process rights, cannot reasonably have been thought to be consistent with Plaintiff's due process rights.[5]

---

[5] The question to be answered in making a determination as to qualified immunity is one involving the reasonableness of the beliefs of Mr. O'Brien and Mr. Sicuso. This determination of 'reasonableness" is one not properly made in deciding a motion to dismiss. Such a determination is more properly made either at trial, or in the very least, in deciding a motion for summary judgment after discovery has taken place.

11

The individual Defendants, Mr. O' Brien and Mr. Sicuso, are not entitled to qualified immunity from suit.

**4. The Governmental Entity Defendants Are Necessary Parties to this Action**

Defendants have set forth a number of grounds upon which they claim that this action should not be allowed to proceed against the governmental entity Defendants, the Commonwealth of Massachusetts Office of the Commissioner of Probation and the Commonwealth of Massachusetts Trial Court.  Despite these arguments, the governmental entity Defendants must remain in this suit, as they are necessary parties.

Plaintiff has asserted that as a result of the deprivation of his Constitutional Due Process rights, his employment was terminated, and he had no viable way to contest or overturn that termination of employment.  As part of the relief he seeks against the governmental entity Defendants, Plaintiff seeks equitable relief, namely an order from this Court restoring him to his former employment.  If Plaintiff prevails on his Constitutional claims, but is not ordered restored to his employment, he will not have been made whole for the wrongs Defendants have done to him.  In order for Plaintiff to be made whole for any injuries he has suffered due to the actions of Defendants, the governmental entity Defendants must be ordered to restore Plaintiff to his former employment.  As the governmental entity Defendants are necessary parties to this litigation, the claims against them must not be dismissed.[6]

---

[6] Should the Court rule that Plaintiff could be restored to his former employment with Defendants by the issuance of an order to the individual Defendants to restore Plaintiff to his former employment, Plaintiff would concede that the governmental entity Defendants

**5. The "Rooker doctrine" does not apply to this action**

Defendants have asserted in their motion to dismiss that the "Rooker doctrine" (more properly known as the "Rooker-Feldman doctrine") applies to this case and deprives this Court of jurisdiction over Plaintiff's claims. This is a meritless argument.

As Defendants have correctly stated, the "Rooker doctrine" stands for the proposition that only the Supreme Court has authority to hear a case seeking to reverse or modify the judgment of a state court, or to hear issues "inextricably intertwined" with a state judgment. See, e.g., Wilson vs. Shumway, 264 F.3d 120, 123-124 (1st Cir. 2001). The doctrine simply has no applicability to this case.

Just as Defendants previously incorrectly argued that the individual Defendants are subject to absolute immunity as "quasi-judicial" officials simply because their agency was an administrative subdivision of the Trial Court, Defendants now incorrectly claim that the actions under review are somehow a Judgment of a state court. There is no factual or legal basis for this claim.

---

are not necessary parties to this suit. However, the Complaint seeks specific injunctive, equitable relief only in those counts asserted against the governmental entity Defendants. The counts against the individual Defendants seek legal relief plus "such other and further relief that this Court deems just and proper." Accordingly, should the Court hold that adequate injunctive or equitable relief can be ordered against the individual Defendants which would make Plaintiff whole, it is respectfully requested that Plaintiff be allowed to amend his complaint to request specific equitable relief against the individual Defendants.

The decision under review (whether that decision is viewed as the termination of Plaintiff's employment, the decision affirming that termination, or the deprivation of Plaintiff's Constitutional rights), is simply not a decision of a state court. At its most basic, the actions at issue are the actions of two supervisors and managers of a state agency, Mr. O'Brien and Mr. Sicuso. Even if the actions under review were deemed to be either those of the Massachusetts Chief Justice for Administration and Management, or the Advisory Committee on Personnel Standards of the Trial Court, those decisions are still not <u>Judgments</u> of a state court.

Although the decisions at issue were made by managers of a subdivision of the Trial Court, and although the actions of the Massachusetts Chief Justice for Administration and Management, or the actions of Advisory Committee on Personnel Standards of the Trial Court at issue might be considered the actions of judges, these are <u>administrative</u> decisions, not <u>judgments</u>. To claim that the actions at issue are "judgments of a state court" is nothing more than a misleading exercise in sophistry.

**6. Plaintiff Has Exhausted His Meaningful Remedies**

Defendants assert in their motion that Plaintiff has not exhausted all of his "state judicial remedies," and therefore is not entitled to invoke the jurisdiction of this Court to remedy a violation of his Due Process rights. This argument must fail, as Defendants misstate the nature, extent and applicability of the supposed "remedy."

The "remedy" advanced by Defendants is the right of the Supreme Judicial Court, in very limited and extreme circumstances, to "exercise or supercede" any of the "powers, duties and responsibilities of the chief justice for administration and management" pursuant to MGL Chapter 211 section 3.

Initially, it is not at all clear that the deprivation of rights at issue in this case would qualify as an exercise of the "powers, duties and responsibilities" of the Chief Justice for Administration and Management ("CJAM"). Although the CJAM did deny Plaintiff's initial appeal from the decision of Defendant O'Brien, neither the decision of Mr. O'Brien itself, nor the subsequent decision of the Advisory Committee on Personnel Standards of the Trial Court, were actions of the CJAM.

Secondly, even if the deprivation as issue is deemed somehow to be an exercise of the "powers, duties and responsibilities" of the CJAM, Chapter 211 section 3 specifies that the "power to exercise or supercede" the powers, duties and responsibilities of the CJAM is to be done only "<u>under extraordinary circumstances leading to a severe, adverse impact on the administration of justice</u>," and only if a majority of the Supreme Judicial Court so finds. Clearly, the provision in section 3 for the Supreme Judicial Court to usurp the powers of the CJAM, is not a procedure designed or intended to be used to remedy denials of due process in the course of a personnel action. As important as this matter is to Plaintiff, and as serious as his deprivation of constitutional rights has been, it cannot be said that the circumstances of this case are "extraordinary" and would lead to a severe, adverse impact on the administration of justice.

15

Finally, in light of the exceedingly strict standard set forth for intervention by the Supreme Judicial Court, the "remedy" advanced by Defendants would be futile for Plaintiff, and he is therefore not required to exhaust it.

Plaintiff has not failed to exhaust the state remedies available to him.

**7. The "Parret-Hudson" doctrine does not bar the complaint in this action.**

Defendants have claimed that the complaint in this action is barred by the so-called "Parret-Hudson" doctrine. As is set forth by Defendants, the doctrine holds that when a deprivation of property rights is based upon "random and unauthorized conduct' by state officials, the due process inquiry is limited to the issue of the adequacy of the postdeprivation remedies provided by the state. See, e.g., Hadfield vs. McDonough, 407 F.3d 11, 19-21 ((1st Cir. 2005); Cronin vs. Town of Amesbury, supra, at 385.[7]

Initially, it cannot yet be determined whether or not the deprivations complained of by Plaintiff were "random and unauthorized conduct," or were actins consistent with an established policy of the Office of the Commissioner of Probation. Accordingly, the "Parret-Hudson" argument is premature at this point in this litigation.

---

[7] It is worth noting that in both the Hadfield and Cronin cases, the type of postdeprivation, post-termination procedure which was deemed an adequate remedy for a pretermination deprivation of due process, was an appeal hearing before the Civil Service Commission and a right to subsequently appeal into Superior Court. No such adequate and comprehensive remedies were available to Plaintiff.

16

Secondly, as is discussed above, Defendants have taken the position in their motion to dismiss that the January 2004 hearing was the "pretermination" hearing to which Plaintiff was a party. As there was no meaningful, adequate or comprehensive process available to Plaintiff **after** the January 2004 hearing to correct deficiencies in that pretermination hearing, Plaintiff's deprivation of rights was not only caused by what might be "random and unauthorized acts," his deprivation was also caused by deficiencies in the postdeprivation remedies themselves. The legal procedure made available to Plaintiff after the January 2004 hearing was itself insufficient.[8]

Finally, as was discussed earlier in this brief, the postdeprivation remedies made available to Plaintiff were insufficient to correct the deprivation of his Due Process rights which occurred at the January 2004 hearing. The right to an oral and written appeal, first to the Chief Justice for Administration and Management and then to the Advisory Committee on Personnel Standards of the Trial Court, cannot correct the failure to require witnesses to testify under oath, preventing Plaintiff from engaging in discovery under threat of discipline, denying discovery to Plaintiff, admitting biased evidence, admitting evidence which was obtained improperly and was improperly created, having a predetermined result of the hearing, having the hearing presided over by a Hearing Officer who gave the impression of bias, or the other procedural defects alleged in the complaint. The postdeprivation remedies made available to Plaintiff were inadequate to correct the deprivations to which he had been subjected.

---

[8] Please see section 1 above for a discussion of why the postdeprivation remedies available to plaintiff were inadequate to correct the violation of his right to Due Process of law.

17

The complaint in this action is not barred by the "Parret-Hudson" doctrine.

**CONCLUSION**

For all of the foregoing reasons, it is respectfully requested that the motion to dismiss be denied in its entirety.

                                                              Respectfully submitted,
                                                              Andrew Chmielinski
                                                              By his attorney
                                                              Mitchell J. Notis

                                                         /s/Mitchell J. Notis

                                                         _____
                                                          Mitchell J. Notis
                                                          Law office of Mitchell J. Notis
                                                          370 Washington Street
                                                          Brookline, MA 02445
                                                          617-566-2700
                                                          BBO# 374360