UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ANDREW CHMIELINSKI,
Plaintiff,

v.

COMMONWEALTH OF MASSACHUSETTS, OFFICE OF THE COMMISSIONER OF MASSACHUSETTS TRIAL COURT JOHN J. O'BRIEN, individually, and ANTHONY J. SICUSO, individually,

Defendants.

Civil Action No. 05-11418- NMG

REPORT AND RECOMMENDATION
ON DEFENDANTS' MOTION TO DISMISS (Docket # 13)

SOROKIN, M.J.

The Defendants have filed a motion to dismiss pursuant to both Fed. R. Civ. P. 12(b)(1) (for a lack of subject matter jurisdiction) and Fed. R. Civ. P. 12(b)(6) (for failure to state a claim upon which relief may be granted). (Docket # 13). In response to an Order of Reference dated November 1, 2006, (Docket # 17), I recommend that the Motion be ALLOWED.

PROCEDURAL HISTORY AND FACTUAL BACKGROUND

On July 6, 2005, the Plaintiff ("Chmielinski") filed his Complaint. Docket No. 1-1. He alleges therein that he was unlawfully terminated from his employment as a Chief Probation Officer in the Milford District Court on February 20, 2004. Id., at ¶ 1. The Defendants filed a joint Motion to Dismiss on March 13, 2006. Docket #13. Chmielinski filed his opposition on

April 25, 2006. The Court referred the Motion to Dismiss to the undersigned United States Magistrate Judge on November 1, 2006. (Docket No. 17). Oral argument was held on December 18, 2006.

Chmielinski began his employment with the Commonwealth of Massachusetts Trial Court ("Trial Court") as a temporary Probation Officer in 1976. Docket 1-1, at ¶ 9.[1] He began working in that position as a permanent employee in 1979, initially in the Dorchester District Court and since 1996 in Milford District Court, where he served as Chief Probation Officer. Id., at ¶ 10. In May of 2003, Chmielinski was placed on a paid, involuntary administrative leave. Id., at ¶ 11. During April and May of 2003, Chmielinski became aware of complaints about both the quality of his work performance and his workplace conduct. Id., at ¶ 15. On April 15, 2003, he was informed by letter from Defendant Sicuso, the Deputy Commissioner/Legal Counsel of the Officer of the Commissioner of Probation, that allegations of misconduct had been made against him. Id., at ¶ 15. Sicuso refused to provide Chmielinski or his counsel with details of the allegations against him at a May 13, 2003, meeting. Id. On May 16, 2003, Chmielinski was placed on an involuntary administrative leave, with pay. Id., at ¶ 16. In a letter of that date, Sicuso delineated certain conditions of Chmielinski's leave, including that he not appear at the premises of the Milford District Court, not contact any employees or former employees of same, and that he refrain from all "conflict, intimidating/retaliatory behavior and from any behavior which creates the appearance of conflict, of intimidation or retaliation." Id., at ¶ 16. During May and June, 2003, the Trial Court/Office of the Commissioner conducted an investigation into

[1] Chmielinski's allegations are here recited as if true, in keeping with the standard of review for motions brought pursuant to Fed. R. Civ. P. 12(b)(6)

the allegations against Chmielinski, which resulted in a report drafted by Regional Supervisor Elizabeth Slaney, at Sicuso's direction. Id., at ¶ 17. The report included statements of embedded hearsay. Id. Further investigation was conducted by the Trial Court/Office of the Commissioner after receipt and review of the report. Id., at ¶ 18. Charges were made against Chmielinski by the Trial Court/Office of the Commissioner in early September, 2003. They were: (1) that he had shoplifted on September 12, 2002; (2) that he improperly obtained a "blue light permit" and mounted the light on his personal vehicle; (3) that he made improper disclosures of court records; (4) that activities undertaken by Chmielinski relating to a speeding ticket of a family member created the appearance of impropriety; (5) that he carried a firearm while on duty approximately four years earlier; (6) and, that he was involved in improper interactions with other employees. Id., at ¶ 19.

A hearing was conducted concerning the allegations on January 12 and January 24, 2004, with Defendant O'Brien, the Commission of Probation, presiding. Id., at ¶ 20. This was the only evidentiary hearing conducted. Id., at ¶ 21. Chmielinski had an opportunity at that hearing to present evidence on his behalf and to question witnesses. Id. Chmielinski alleges many procedural inadequacies concerning the hearing, including: that there was no pre-hearing discovery; that the terms of Chmielinski's leave prevented him from conducting an investigation and preparing a defense; that witnesses were not sworn; that witnesses were not sequestered; that various categories of evidence were improperly admitted; that certain of his evidence was not addressed or considered by O'Brien; that O'Brien lunched with counsel for the Trial Court/Office of the Commissioner on one of the hearing days, which is indicative of bias; and, that O'Brien issued his decision too quickly despite Chmielinski's counsel not having had an

opportunity to make a written submission. Id., at ¶ 22. The decision issued thirty days after the hearing, but one day after Chmielinski's counsel received a copy of the transcript. Id., at ¶¶ 22-23. Chmielinski also alleges that the outcome of the hearing was pre-ordained. Id.

On February 20, 2004, O'Brien issued a decision finding for Chmielinski on some charges, but terminating his employment based upon others. Id., at ¶ 23. On March 1, 2004, Chmielinski made a detailed written appeal of the decision to the Chief Justice for Administration and Management. Id., at ¶ 24.[2] The Chief Justice denied the appeal and upheld Chmielinski's termination. Id. Chmielinski next exercised his right pursuant to M.G.L. c. 211B, §8, to appeal his termination to the Advisory Committee on Personnel Standards of the Trial Court. Id., at ¶ 25. The Advisory Committee affirmed the termination on November 23, 2004. Id. Chmielinski appealed the decision no further. Id., at ¶ 26.

Chmielinski filed suit on July 6, 2005. He brings the following claims:

1. Count I is directed against Defendant O'Brien for violation of 42 U.S.C. §1983 (5th and 14th Amendment due process violations);

2. Count II is directed against Defendant Sicuso for violation of 42 U.S.C. §1983 (also 5th and 14th Amendment due process violations);

3. Count III is directed against the Commonwealth of Massachusetts Trial Court for violation of 42 U.S.C. §1983. The Count alleges *respondeat superior* liability for the actions of the individual defendants; and,

---

[2] The review conducted by the Chief Justice for Administration and Management is provided for by §16.400 ("Appeal and Review of Disciplinary Action") of the Policies and Procedures Manual of the Human Resources Department of the Massachusetts Court System, to which the Parties referred at argument, and which is publically available at http://www.mass.gov/courts/admin/hr/tableofcontents.html.

4. Count IV is directed against the Commonwealth of Massachusetts Office of the Commissioner of Probation for violation of 42 U.S.C. §1983. The Count alleges *respondeat superior* liability for the actions of the individual defendants.

The claims against the individual defendants are brought in their individual capacities only, for money damages. Docket # 1-1, at 2.

The Defendants jointly filed their motion to dismiss on March 13, 2006. They assert both a lack of subject matter jurisdiction and that the Complaint fails to state a claim upon which relief may be granted.

Standard of Review

Dismissal pursuant to Fed. R. Civ. P. 12(b)(6) is available when the Plaintiff "fail[s] to state a claim upon which relief can be granted." That is, dismissal is appropriate only when it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim that entitle him to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). In reviewing a motion to dismiss, the Court accepts as true the well-pleaded factual allegations of the Complaint, drawing all reasonable inferences therefrom in the plaintiff's favor, and determines whether the complaint, so read, sets forth facts sufficient to justify recovery on any cognizable theory. Gillian v. Fulton, 399 F.3d 381, 386 (1st. Cir.2005).

A motion to dismiss for lack of subject matter jurisdiction brought pursuant to Fed. R. Civ. P. 12(b)(1) is reviewed under a standard similar to that governing Rule 12(b)(6) motions.. Murphy v. U.S., 45 F.3d 520, 522 (1st Cir.1995). A party invoking the jurisdiction of a federal court bears the burden of proving its existence. Id.

Subject Matter Jurisdiction

The Defendants raised two jurisdictional objections to Chmielinski's lawsuit. They first argue that this Court lacks subject matter jurisdiction over each of the Plaintiff's claims because the decision of a Massachusetts court is reviewable only by that state's Supreme Judicial Court, and not by the United States District Court. Docket #13, at 8, citing, Wilson v. Shumway, 264 F.3d 120, 124 (1st.Cir.2001); Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923). Chmielinski counters that the employment decisions at issue are not "decisions of a court" for purposes of this analysis, but merely the administrative actions of court employees. Docket #15, at 13-14. The question before this Court, then, is whether this case involves a state court judgment that implicates the so-called Rooker-Feldman doctrine. The Eleventh Circuit has described the doctrine as one which poses the question,

> "is the federal plaintiff seeking to set aside a state judgment, or does he present some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party? If the former, then the district court lacks jurisdiction; if the latter, then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion." Narey v. Dean, 32 F.3d 1521, 1524-25 (11th Cir.1994).

The U.S. Supreme Court has stated with regard to the doctrine that District Courts have no jurisdiction "to review final judgments of a state court in judicial proceedings." District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 482 (1983) (emphasis added). The Supreme Court has also indicated that unreviewed state agency decisions are not jurisdictionally barred by the Rooker Feldman doctrine, but do present issues of res judicata/claim preclusion. University of Tennessee v. Elliott, 478 U.S. 788 (1986). In Tennessee v. Elliot, the University of Tennessee had terminated Elliott, who challenged the termination in a state administrative

proceeding. Id., at 791. Elliot's termination was reviewed by a state administrative proceeding, but not by a state court proceeding. Id. He brought a lawsuit in federal court bringing claims under Title VII and § 1983. The Supreme Court, which created the Rooker-Feldman doctrine, did not raise a jurisdictional bar to Elliot's claim (although it is bound to raise such jurisdictional issues *sua sponte* Liberty Mutual Ins. Co. v. Wetzel, 424 U.S. 737, 740 (1976)), but rather held that if a state agency, " 'acting in a judicial capacity . . . resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate,' " its findings of fact would be given preclusive effect in a subsequent § 1983 action.

Chmielinski's claims, then, are not jurisdictionally barred by the Rooker-Feldman doctrine, since the previous reviews of his termination were not the judicial proceedings of a court, but rather were the administrative decisions of a state agency (albeit the Commonwealth's court system, Chmielinski's employer).

The Defendants' second challenge to this Court's jurisdiction of Chmielinski's claim is that Chmielinski has failed to exhaust his administrative remedies, thus barring his claim. Docket #13, at 8, citing Boston Environmental Sanitation Inspectors Assoc. v. City of Boston, 794 F.2d 12, 13 (1st Cir.1986). G.L. c. 211, §3 gives to the Massachusetts Supreme Judicial Court "general superintendence of the administration of all courts of inferior jurisdiction." It excepts, however, "the powers, duties and responsibilities of the chief justice for administration and management" (the official to whom Chmielinski made his final administrative appeal) "except under extraordinary circumstances leading to a severe, adverse impact on the administration of justice." Id. The defendants' contention is that Chmielinski "was deprived of nothing: unless and until the [Supreme Judicial Court of Massachusetts] rejected any contention

that the termination adversely impacted upon Massachusetts justice." Docket #13, at 10.

The U.S. Supreme Court, however, has expressly rejected a requirement of exhaustion of administrative remedies in suits brought pursuant to 42 U.S.C. §1983. Patsy v. Board of Regents of State of Florida, 457 U.S. 496, 501-516 (1982). As all of Chmielinski's claims are Section 1983 claims, his failure to bring his claim to the Supreme Judicial Court is not a jurisdictional bar to this action.

Failure to State A Claim

Claims against Commonwealth Agencies

The Commonwealth Agency defendants move to dismiss the claims brought against them as barred by the Eleventh Amendment to the Constitution of the United States. Docket #13, at 11. The U.S. Supreme Court has consistently held that an unconsenting state is immune from suits brought in a federal court by its own citizens or by citizens of another state. Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 267-268 (1997); Edelman v. Jordan, 415 U.S. 651, 657 (1974). This immunity extends to any entity that is an arm of the state. Wojcik v. Massachusetts State Lottery Com'n, 300 F.3d 92, 99 (1st Cir.2002). Because of this Eleventh Amendment immunity, although municipalities and other local government units are 'persons' within the meaning of 42 U.S.C. § 1983 (Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 690 (1978)), states are not. Will v. Michigan Dept. of State Police, 491 U.S. 58, 66 (1989). Thus, the Defendants Commonwealth of Massachusetts Office of the Commissioner of Probation and Commonwealth of Massachusetts Trial Court of Probation are each immune from Chmielinski's suit.

Moreover, even leaving aside the Eleventh Amendment immunities, the counts directed

against the Commonwealth defendants fail to state a claim in that they assert liability on the part of each Commonwealth defendant on a *respondeat superior* basis (e.g., "Defendant Sicuso and Defendant O'Brien were acting in their official capacities. . .when the took the actions set forth herein which violated Plaintiff Chmielinski's constitutional rights . . .Accordingly, the Defendant Commonwealth of Massachusetts Trial Court is fully responsible for their actions"). Docket #1-1, at 14-15. The doctrine of *respondeat superior*, however, does not provide a basis for liability pursuant to 42 U.S.C. §1983. Rather, it is only when execution of a government's policy or custom inflicts the injury that the government as an entity is responsible under § 1983. Monell, 436 U.S. at 694.

Accordingly, I recommend that the motion to dismiss Counts III and IV of the Complaint be ALLOWED. In the event that the Court does not dismiss Counts I and II, I recommend that Chmielinski be permitted to amend his Complaint to add against the individual defendants claims for injunctive relief in their official capacities.[3]

Claims Against Individuals

Absolute Quasi-Judicial Immunity

The individual defendants argue that Chmielinski has failed to state an actionable claim against them because they enjoy both absolute and qualified immunities from suit and because the Complaint fails to state a constitutional violation.

They first argue that they are absolutely immune from the claims advanced by

[3] At oral argument, Chmielinski's counsel indicated that Counts III and IV were intended, at least in part, to provide a mechanism for injunctive relief. Defendants' counsel expressed no opposition to such an amendment of the counts directed against the individuals, should the claims against them survive.

Chmielinski because they were performing quasi-judicial functions and that judges are immune from civil liability for their official actions. Docket # 13, at 12-14. As noted by the Defendants, the immunity applies where the duties performed are "closely associated with the judicial process." Id., citing Cok v. Consentino, 876 F.2d 1, 3 (1st Cir.1989). Noting the extension of judicial immunities to others playing "quasi-judicial" roles in the administration of justice (for example, prosecutors, grand jurors, probation officers, and court-appointed experts), Defendant O'Brien suggests that because he acted as hearing officer and was functionally equivalent to an administrative law judge, he should also enjoy an absolute quasi-judicial immunity. Id. Defendant Sicuso argues for the same immunity because he acted at O'Brien's direction. Docket #14, at 14, citing Temple v. Marlborough Div. of the Dist. Ct. Dep't., 395 Mass. 117, 133 (1985) (court clerks immune from liability for conduct engaged in while acting at judge's direction).

Indeed, the U.S. Supreme Court has extended absolute quasi-judicial immunity to administrative law judges in the federal system. Butz v. Economou, 438 U.S. 478, 512-513 (1978). The Court emphasized, however, that the administrative law judges were conducting proceedings in which "the safeguards built into the judicial process tend to reduce the need for private damages actions as a means of controlling unconstitutional conduct." Id., at 512. Those safeguards include the rules of evidence, and the fact that witnesses are sworn. Id. In light of the fact that it is the very sufficiency of the safeguards built into the review of Chmielinski's termination which are raised by his Complaint, the record is insufficient to find that as a matter of law, O'Brien's role was sufficiently like that of a trial judge to entitle him to absolute qualified immunity. Sicuso consequently cannot enjoy an immunity by reason of having acted at O'Brien's direction.

Constitutionality of Process

Sicuso and O'Brien next argue that the counts directed against them fail to state a claim because they fail to allege a cognizable constitutional violation, without which a § 1983 claim necessarily fails. Docket #13, at 4-8.

The Due Process Clauses of the Fourteenth Amendment and other provisions of the U.S. Constitution protect employees of the government as well as to those who are served by it, and 42 U.S.C. § 1983 provides a cause of action for all citizens injured by an abridgment of those protections. Collins v. City of Harker Heights, Tex., 503 U.S. 115, 119-120 (1992). Nevertheless, § 1983 does not provide a cause of action for conduct which may be tortious or objectionable, but not in violation of federal law. Id., at 119. It is well-established that a state actor's failure to observe a duty imposed by state law, standing alone, is not sufficient to establish a § 1983 claim. Fournier v. Reardon, 160 F.3d 754 (1st Cir.1998), citing Martinez v. Colon, 54 F.3d 980, 989 (1st Cir.1995). Although it is true that constitutional significance may attach to certain interests created by state law, not every transgression of state law does double duty as a constitutional violation. Martinez, 54 F.3d at 980. "[T]he Constitution is not an empty ledger awaiting the entry of an aggrieved litigant's recitation of alleged state law violations. . ." Id.

To state a § 1983 claim concerning his termination, Chmielinski must have had a property right in continued employment, of which he was deprived without due process. Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538 (1985).

Chmielinski's rights were governed at least in part by M.G.L. c. 211B, §8. Docket #1-1, at 10. Property interests are not created by the Constitution but rather "they are created and their

dimensions are defined by existing rules or understandings that stem from an independent source such as state law." Id. M.G.L. c. 211B, §8 governs *inter alia*, termination procedures for employees of the Massachusetts trial court, and supports the conclusion that Chmielinski had a property right in continued employment.

Our remaining inquiry, then, is whether the deprivation of that right was carried out by constitutionally adequate procedures. It is well-established that "individuals whose property interests are at stake are entitled to notice and an opportunity to be heard." Mard v. Town of Amherst, 350 F.3d 184, 189 (1st Cir. 2003), citing Dusenbery v. United States, 534 U.S. 161, 167 (2002). Due process requires notice that is reasonably calculated under all the circumstances to apprize the affected individual of the pendency of the action and to afford him an opportunity to present his objections, and that affords him a fundamentally fair chance to present his or her side of the story. Id., citing Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950); Puerto Rico Telephone Co. v. Telecommunications Regulatory Bd. of Puerto Rico, 189 F.3d 1, 19 (1st Cir.1999). In general, the state must provide "some kind of hearing" before depriving an individual of a protected property interest. Mard, 350 F.3d at 192, citing Zinermon v. Burch, 494 U.S. 113, 127 (1990). This hearing need not be elaborate and need only provide "an initial check against mistaken decisions." Mard, 350 F.3d at 192, citing Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 546 (1985).

There is no question in this case of sufficiency of notice. Chmielinski concedes that he was notified of the nature of the charges against him in early September, 2003, and that the hearing commenced on January 12, 2004. Docket #1-1, at 6. He also concedes that he had the opportunity at the hearing to present evidence and to question the evidence put forward by his

employer. Id., at 7.

Chmielinski was terminated as of February 20, 2004, the date of Defendant O'Brien's post-hearing decision. Although G.L. c. 211B §8 provides in part that "[e]very removal of an officer or employee whose appointment was subject to the provisions of this section shall be reviewed by the [Advisory Committee on Personnel Standards], and no such removal shall be final until approved by the committee," this merely refers to the availability of review of the termination decision. Upon issuance of O'Brien's decision, Chmielinski's status changed from being on involuntary administrative leave, with pay, to having been terminated. Docket #1-1, at ¶¶16, 23. We need not dwell on the perceived inadequacies of the pre-termination process, because although Chmielinski raises numerous concerns about evidentiary and other matters concerning the conduct of the hearing (as enumerated supra, at pp. 3-4), these consist of challenges directed to O'Brien and Sicuso's conduct rather than to a flaw in the process itself. Such claims implicate the so-called Parratt-Hudson doctrine, which provides that when a deprivation of a property interest is occasioned by random and unauthorized conduct by state officials, the due process inquiry is limited to the issue of the adequacy of the post-deprivation remedies provided. Hadfield v. McDonough, 407 F.3d 11, 19-20 (1st Cir.2005). The post-deprivation remedies provided in this case, both by Massachusetts Court System rules and by state law, are adequate. Chmielinski concedes that he made a detailed presentation of his objections concerning O'Brien's and Sicuso's conduct to the Chief Justice for Administration and Management pursuant to Massachusetts Court System Rule 16.400, and that he next exercised his statutory right pursuant to M.G.L. c. 211B, §8, to make an oral argument to the Trial Court's Advisory Committee on Personnel Standards, comprised of the Chief Justices of

the various court departments. Docket #1-1, at 9-10. Chmielinski conceded at oral argument that the issues raised in his Complaint were raised before those reviewers. Thus, there was adequate process under the Court's rules and under state law to address the pre-termination inadequacies alleged.

In short, Chmielinski received notice and an opportunity to be heard. At the hearing, he had the opportunity to submit his own evidence and challenge the evidence submitted against him. He complains that his employer's order prohibiting him from contact with employees at the courthouse at which he had worked prevented investigation into the charges. The order, however, was not so broad. Chmielinski was represented by counsel; the order did not bar counsel's investigation into the facts. Both O'Brien's decision and the process which produced the decision were subject to review twice. Both the CJAM individually and later the Committee affirmed the decision. Although Chmielinski is dissatisfied with the result of the process, that does not amount to a constitutional deprivation.[4]

---

[4] Because I conclude that the conduct alleged does not state a claim of a constitutional violation, I do not address Defendant Sicuso and O'Brien's additional argument that even if they had committed a constitutional violation, they are nevertheless shielded from suit by qualified immunity doctrine.

**CONCLUSION**

For the foregoing reasons, I recommend that the Court ALLOW the Defendants' Motion to Dismiss (Docket #13).[5]

A Rule 16 Conference will be scheduled, if necessary, after the District Judge's ruling on the Motion to Dismiss.

/s / Leo T. Sorokin
UNITED STATES MAGISTRATE JUDGE

Date: December 22, 2006

[5]The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72, any party who objects to these proposed findings and recommendations must file specific written objections thereto with the Clerk of this Court within 10 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation. See Keating v. Secretary of Health and Human Services, 848 F.2d 271 (1st Cir.1988); United States v. Emiliano Valencia-Copete, 792 F.2d 4 (1st Cir.1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603 (1st Cir.1980); United States v. Vega, 678 F.2d 376, 378-379 (1st Cir.1982); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir.1983); see also, Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466 (1985).