UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No. 05-11418-NMG

_____

**ANDREW CHMIELINSKI**
*Plaintiff*

v.

**COMMONWEALTH OF MASSACHUSETTS,
OFFICE OF THE COMMISSIONER OF
MASSACHUSETTS TRIAL COURT
JOHN J. O'BRIEN, individually
and ANTHONY J. SICUSO, individually**
*Defendants*
_____

**PLAINTIFF'S OBJECTIONS PURSUANT TO RULE 72(B)
TO REPORT AND RECOMMENDATION OF MAGISTRATE
ON DEFENDANTS' MOTION TO DISMISS**

Pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, Plaintiff Andrew Chmielinski hereby objects to the Report and Recommendation of Magistrate Sorokin on Defendants' Motion to Dismiss.

In his December 22, 2006 Report and Recommendation Magistrate Sorokin granted the Motion to Dismiss of Defendants.

Although Magistrate Sorokin issued a thorough and well-detailed decision containing an exacting analysis of the facts of this matter, the Motion and the Opposition, Plaintiff objects to his Report and Recommendation. Specifically, Plaintiff objects to the following findings in the Report and Recommendation:

1

  1. That Counts I and II of the Complaint against the individual Defendants pursuant to 42 U.S.C. §1983 should be dismissed as Plaintiff had adequate notice and opportunity to be heard, with regard to the termination of his employment, and therefore his due process rights were not abridged.

  2. That Counts III and IV of the Complaint against the governmental entity Defendants should be dismissed pursuant to the Eleventh Amendment to the Constitution of the United States.

  3. That the pre-termination "hearing" held by Defendants were not tainted by a failure to allow Plaintiff to engage in discovery or to adequately investigate the charges against him.

In urging this Court to reject the Report and Recommendation of Magistrate Sorokin, and to deny the Motion to Dismiss, Plaintiff relies upon both this Opposition as well as the Opposition originally filed in response to the Motion to Dismiss. The original Opposition is incorporated by reference herein. As the facts of this matter are adequately set forth in the Opposition as well as in Magistrate Sorokin's Report and Recommendation, the facts of this matter are not repeated herein, other than in summary fashion. Finally, except as may be noted otherwise, Plaintiff does not disagree with the legal standards set forth in Magistrate Sorokin's decision, but rather, Plaintiff disagrees with his application of the relevant law to the facts of this action). Accordingly, Plaintiff has not repeated the controlling law in this Brief.

**I. FACTUAL BACKGROUND**

As is set forth in detail in the Complaint in this action, in the Opposition to the Motion to Dismiss, and in Magistrate Sorokin's decision, this action involves a claim by a former Chief Probation Officer that the manner in which his employment was terminated by Defendants violated his rights under the Fifth and Fourteenth Amendments to the United States Constitution to due process of law.

Charges were lodged against Plaintiff by the Trial Court/Office of the Commissioner of Probation in September, 2003. Defendant Sicuso was involved in assisting in the prosecution of the case against Plaintiff. Defendant O'Brien was the individual who conducted the hearing regarding the allegations. A hearing was conducted concerning the allegations in January, 2004. Plaintiff has claimed that during the course of the investigation of the allegations by Defendants as well as during the hearing itself, a variety of actions were taken by Defendants which served to deny Plaintiff his right to due process of law. The hearing and the challenges to it were summed up by Magistrate Sorokin at page 3 of his decision as follows:

> This was the only evidentiary hearing conducted. Id., at ¶ 21. Chmielinski had an opportunity at that hearing to present evidence on his behalf and to question witnesses. Id. Chmielinski alleges many procedural inadequacies concerning the hearing, including: that there was no pre-hearing discovery; that the terms of Chmielinski's leave prevented him from conducting an investigation and preparing a defense; that witnesses were not sworn; that witnesses were not sequestered; that various categories of evidence were improperly admitted; that certain of his evidence was not addressed or considered by O'Brien; that O'Brien lunched with counsel for the Trial Court/Office of the Commissioner on one of the hearing days, which is indicative of bias; and, that O'Brien issued his decision too quickly despite Chmielinski's counsel not having had an opportunity to make a written submission. Id., at ¶ 22. The decision issued thirty days after the hearing, but one day after Chmielinski's counsel received a copy of the transcript. Id., at ¶¶ 22-23. Chmielinski also alleges that the outcome of the hearing was pre-ordained. Id.

On February 20, 2004 Defendant O'Brien issued a decision finding in favor of Plaintiff on some charges, but terminating his employment based on others.

On March 1, 2004 Plaintiff made a written appeal of the decision terminating his employment to the Chief Justice for Administration and Management. Id., at ¶ 24. The Chief Justice denied the appeal and upheld the termination. Plaintiff then exercised his right pursuant to M.G.L. c.211B §8, to appeal his termination to the Advisory Committee on Personnel Standards of the Trial Court. The Advisory Committee affirmed the termination on November 23, 2004.

This suit was filed on July 6, 2005.

Defendants jointly filed a Motion to Dismiss on March 13, 2006. Oral argument on the Motion was held in front of Magistrate Sorokin on December 18, 2006. On December 22, 2006 Magistrate Sorokin issued his Report and Recommendation.

In his decision, Magistrate Sorokin recommended that the Motion to Dismiss be denied with regard to several of the grounds asserted in the Motion. However, he granted the Motion to Dismiss against the governmental entity Defendants on the ground that Eleventh Amendment immunity precluded suit against them.[1] As to the individual Defendants, Magistrate Sorokin held that Plaintiff had adequate notice and an adequate opportunity to be heard in relation to the termination of his employment, so that his constitutional rights were not violated. It is these holdings with which Plaintiff takes issue, and on which Plaintiff requests the Court reject the Magistrate's Report and Recommendation.

## II.     ARGUMENT

**1.      <u>The Claims against Defendants Sicuso and O'Brien should not be Dismissed.</u>**

In determining that the claims against the individual Defendants, Mr. Sicuso and Mr. O'Brien, should be dismissed, Magistrate Sorokin narrowed the issues before the Court to the issue of whether the deprivation of Mr. Chmielinski's property or liberty rights were "carried out by constitutionally adequate procedures." As Magistrate Sorokin stated at page 12 of his Report:

> "It is well established that individuals whose property interests are at stake are entitled to notice and an opportunity to be heard…Due process requires notice that is reasonably calculated under all the circumstances to apprize the affected individual of the pendency of the action and to afford him an opportunity to

---

[1] In his decision, Magistrate Sorokin did recommend that if the Court allows this action to survive after reviewing the Report and Recommendation, Plaintiff should be allowed to amend his Complaint to specifically add claims for injunctive relief against the individual defendants in their official capacities.

>present his objections, <u>and that affords him a fundamentally fair chance to present his or her side of the story</u>." (emphasis added).

The claim being made by Plaintiff Chmielinski is essentially that the process afforded him <u>after</u> the termination of his employment <u>did not afford him a fundamentally fair chance to present his side of the story.</u>

Magistrate Sorokin noted that a pre-termination hearing need not be elaborate. He also noted that in this case the sufficiency of notice was not an issue. It is also clear from Magistrate Sorokin's decision that he adopted the reasoning in Defendants' Motion to Dismiss that the hearing conducted by Commissioner O'Brien in January 2004 was indeed a "pre-termination" hearing. The question presented is thus whether the procedures available to Plaintiff Chmielinski <u>after</u> the decision made by Commissioner O'Brien were adequate to protect Plaintiff's due process rights.

The crux of the Magistrate's decision (and the portion of his decision with which Plaintiff takes issue) is set forth at pages 13-14 of the Magistrate's Report and Recommendation. That portion of the decision reads as follows:

>"Such claims implicate the so called <u>Parratt-Hudson</u> doctrine, which provides that when a deprivation of a property interest is occasioned by random and unauthorized conduct by state officials, the due process inquiry is limited to the issue of the adequacy of the post-deprivation remedies provided…The post-deprivation remedies provided in this case, both by Massachusetts Court System rules and by state law, are adequate. Chmielinski concedes that he made a detailed presentation of his objections concerning O'Brien's and Sicuso's conduct to the Chief Justice for Administration and Management pursuant to Massachusetts Court System Rule 16.400, and that he next exercised his statutory right pursuant to M.G.L. c.211B, §8, to make an oral argument to the Trial Court's Advisory Committee on Personnel Standards, comprised of the Chief Justices of the various court departments…Chmielinski conceded at oral argument that the issues raised in his Complaint were raised before those reviewers. Thus, there was adequate process under the Court's rules and under state law to address the pre-termination inadequacies alleged.
>…
>Both O'Brien's decision and the process which produced the decision were subject to review twice. Both the CJAM individually and later the Committee

    affirmed the decision.  Although Chmielinski is dissatisfied with the result of the process, that does not amount to a constitutional deprivation."

The decision of the Magistrate is incorrect.

Relevant case law distinguishes between the process which is due <u>prior</u> to termination, and the process which is due <u>after</u> termination.[2]  In <u>Mard v. Town of Amherst</u>, 350 F.3rd 184, 192-193 (1st Cir. 2003), the Court stated:

> "The due process clause requires an opportunity to be heard…at a meaningful time and in a meaningful manner…in general, the state must provide some kind of hearing before depriving an individual of a protected property interest…this hearing need not be elaborate.  Rather, <u>where more comprehensive post-termination procedures are available</u>, the pre-termination hearing need only provide an initial check against mistaken decisions.
> …
> <u>The adequacy of this kind of limited, pre-termination hearing rests in part upon the availability of more rigorous post-deprivation procedures</u>.  As the Supreme Court explained in <u>Loudermill</u>, "the existence of post-termination procedures is relevant to the necessary scope of pre-termination procedures."  <u>Id.</u>, at 547 note 12, 105 S.Ct. 1487 (holding that a limited pre-termination hearing was sufficient where it was followed by a <u>more comprehensive</u> post-termination hearing)." (emphasis added)

See also, <u>Cronin v. Town of Amesbury</u>, 895 F.Supp. 375, 385-387, 389 (D.Mass. 1995); 81 F.3d 257 (1st Cir. 1996).  Clearly, whether the process accorded an individual during the "pre-termination" and "pre-deprivation" period is constitutionally adequate, will be determined in large part by the nature of the "post-termination" or "post-deprivation" proceedings.  The case law in this Circuit requires that the post-termination, post-deprivation hearing be <u>more comprehensive</u> than the pre-termination hearing.  That was not the case in the dispute before this Court.

---

[2] As was noted earlier, it is clear from Magistrate Sorokin's decision that he has held that the "process" to be reviewed is the process which occurred after the decision of Commissioner O'Brien and thus, that the hearing which occurred in January, 2004 was a pre-termination hearing.  The process which occurred later, namely the appeal to the Chief Justice for Administration and Management and the appeal to the Personnel Committee of the Trial Court, was the post-termination or post-deprivation process.

6

The only "hearing" conducted in relation to the termination of Plaintiff's employment was the January, 2004 "hearing" conducted by Defendant O'Brien. This was the only opportunity available to Plaintiff to present evidence on his behalf, or to question (other than through oral or written argument) the evidence presented against him. After the issuance of Defendant O'Brien's decision to terminate Plaintiff's employment, Plaintiff exercised his right to file a written appeal with the Chief Justice for Administration and Management of the Massachusetts Trial Court. The Appeal was denied. Pursuant to M.G.L. c.211, §8, as well as the Trial Court's Rules of Procedure, Plaintiff next presented oral argument to the Advisory Committee on Personnel Standards of the Trial Court, urging that his termination be overturned. No further process was available to Plaintiff.

The Complaint in this action as well as Magistrate Sorokin's decision, set forth in detail the various procedural defects Plaintiff claims existed in the investigation of the claims against him and in relation to the January 2004 hearing conducted by Commissioner O'Brien. Plaintiff has alleged and asserts that the "hearing" was not a fair hearing. Under relevant case law, the determination of whether the deficiencies in that hearing rise to the level of a violation of Plaintiff's due process rights, depends upon the extent to which adequate and more comprehensive further process, and adequate and more comprehensive further proceedings, were available to Plaintiff to correct these procedural errors. No such adequate or more comprehensive procedures or process were available to Plaintiff.

Plaintiff has complained that the inadequacies of the January 2004 hearing deprived him of the right, among other things, to engage in discovery, to have witnesses present sworn testimony against him, to have his hearing adjudicated by a hearing officer who did not have the appearance of bias, and to have the issues presented at his hearing determined other than in advance of the hearing. He has also complained that improper evidence was admitted.

As the only "process" allowed to Plaintiff after the January 2004 hearing was a series of oral and written appeals, rather than a "hearing" in which evidence and witnesses could

be properly presented, the procedural defects of the January 2004 "hearing" could never adequately be corrected. The minimal "process" afforded Plaintiff after the January 2004 hearing causes the inadequacies of the January 2004 hearing to be in violation of Plaintiff's due process rights.[3]

Relevant case law does not deem it adequate to have anything other than an actual "hearing" after the termination of a constitutionally protected liberty or property interest. The various cases in this Circuit dealing with this matter focus on the more extensive and additional "process" available to an individual in a post-deprivation proceeding, in order for that proceeding to be valid. See, e.g. Hadfield v. McDonough, et al. 407 F.3d 11, 21 (1st Cir. 2005) (referring to the right to a civil service hearing referred to in the Cronin v. Town of Amesbury case, as well as to the right of a Plaintiff to pursue a post-deprivation remedy in state court); Mard v. Town of Amherst, 350 F.3d 184, 192-193 (1st Cir. 2003), (referring to the need for more comprehensive post-termination procedures and holding that such post-termination procedures were adequate where a Plaintiff had available a hearing under a grievance procedure pursuant to a Collective Bargaining Agreement); Cronin v. Town of Amesbury, 81 F.3d 257 (1st Cir. 1996) (holding that an adequate post-deprivation remedy was the right to have a hearing before the civil service commission and noting that hearing would be before a "disinterested" person). Cronin v. Town of Amesbury, 895 F.Supp. 375, 387 (D.Mass. 1995) (holding that an adequate post-termination remedy would be a "full panoply of post-deprivation administrative procedures" such as a hearing before either the civil service commission or a disinterested person).

---

[3] The only "hearing" afforded to Plaintiff was one conducted by the head of the agency which employed him, his employer. Plaintiff was never allowed the luxury of having his claims or defenses heard by a neutral fact finder. Under these circumstances, it is hard to understand how an oral appeal can be deemed adequate to rectify such an unfair hearing.

It is simply not an adequate protection of due process rights to afford an individual the right to have a defective hearing "reviewed" by another entity. In such a situation, in determining whether or not to uphold the deprivation, the reviewing entity is, by the nature of the process involved, forced to review inappropriate evidence, rely on the inappropriate procedures and make its decision without enabling the individual who has been deprived of liberty or property a fair hearing.

The law requires that Plaintiff Chmielinski have the ability subsequent to the termination of his employment, to have a hearing, which would include discovery, the presentation of evidence, sworn testimony and an unbiased decision maker. The only way the failure to grant him those procedural rights prior to his deprivation can be corrected, is by his having been granted them <u>subsequent</u> to the deprivation. As Mr. Chmielinski did not have that, but merely had the right to make a written and oral argument, the post-deprivation remedies available to him in this case are not adequate to withstand constitutional scrutiny.[4]

**2. <u>The Claims against the Governmental Entity Defendants should not have been Dismissed.</u>**

Magistrate Sorokin dismissed the claims against the governmental entity Defendants in this action on the grounds that they had Eleventh Amendment immunity from suit. However, case law establishes that Eleventh Amendment immunity does not make governmental entities immune from equitable relief.

In <u>State Police for Automatic Retirement Association, et al. v. John DiFava</u>, 317 F.3d 6 (1st Cir. 2003), the First Circuit made clear that there is still jurisdiction in the federal court for suits against states if the relief sought is equitable rather than monetary. The <u>DiFava</u> case dealt with a

---

[4] Plaintiff has certainly argued that the conduct of Defendants' Sicuso and O'Brien contributed to the lack of due process at issue. However, to the extent that neither the Rules or Procedures of the Trial Court, nor the Rules or Procedures of the Commissioner of Probation, nor the Statutes of the Commonwealth grant Plaintiff adequate post-deprivation remedies, <u>the process itself</u> which was afforded to Plaintiff violates Plaintiff's constitutional rights, as well as the conduct of the individual Defendants.

9

suit under the Age Discrimination in Employment Act ("ADEA"). At pages 11-12 of the DiFava decision, the Court elaborated upon the relief available against state entities in federal court under the ADEA as follows:

> "…although the ADEA remained a valid exercise of Congress' power under the commerce clause-this fact alone did not, and could not, enable Congress to override a state's 11th Amendment immunity against suit…hence Kimel did not declare the standards of the ADEA invalid nor inapplicable as they pertained to the states, but simply endorsed the rights of states and political subdivisions to enforce against ADEA lawsuits the immunity conferred by the 11th Amendment…the 11th Amendment however, does not confer upon the states a total immunity against suit…Kimel involved a private action for monetary damages. Neither Kimel, nor 11th Amendment jurisprudence, prevents individuals, such as the Gately Plaintiffs, from obtaining injunctive relief against a state based upon the ADEA…
>
> …
>
> Thus, even though private individuals are precluded by the 11th Amendment from suing the Commonwealth for money damages for violation of the ADEA, the provisions of the ADEA remain fully applicable and may be enforced against the Commonwealth in the manner described."

The First Circuit made clear in State Police for Automatic Retirement Association, et al. v. John DiFava, that although individuals could not seek monetary relief against the Commonwealth for violation of the ADEA, they could indeed bring an action against the Commonwealth in federal court for violation of the ADEA to the extent that they sought equitable or injunctive relief. That holding applies in this case as well.

To the extent that Counts III and IV of the Complaint seek equitable relief against the governmental entities (in other words, the reinstatement of Plaintiff to his former job), those counts must not be dismissed.

3. **The Application of the "Parratt-Hudson" Doctrine at this point in these Proceedings was Improper.**

As was discussed in greater detail in the prior section of this Brief, Magistrate Sorokin dismissed the claims against Defendants Sicuso and O'Brien pursuant to the "Parratt-Hudson" doctrine. In order to reach that result, Magistrate Sorokin held that the challenges posed by Plaintiff were "directed to O'Brien and Sicuso's conduct rather than a flaw in the process itself. Such claims implicate the so-called Parratt-Hudson doctrine, which provides that when a deprivation of a property interest is occasioned by random and unauthorized conduct by state officials, the due process inquiry is limited to the issue of the adequacy of the post-deprivation remedies provided." Report and Recommendation of Magistrate at page 13. The determination that the challenge involved only "random and unauthorized conduct" and therefore the Parratt-Hudson doctrine would apply, was premature.

Specifically, as there has not yet been any discovery conducted in this case, it cannot be determined whether or not the deprivations complained of by Plaintiff were "random and unauthorized conduct," or were actions consistent with an established policy of the Office of the Commissioner of Probation. Based upon the extreme lack of process available to Plaintiff after the deprivation of his liberty and property rights, in other words, the lack of process available after the January 2004 hearing conducted by Commissioner O'Brien, Plaintiff asserts that it is indeed the process itself which is defective (in addition to the specific actions of the individual Defendants). As the only "process" available to Plaintiff after the termination of his employment was an oral and written appeal, it is indeed the process at issue, just as much as the actions of the individual Defendants, which is at issue here. Accordingly, the application of the Parratt-Hudson doctrine to this case was premature.

4. **It was error to hold that Defendants' actions did not prevent Plaintiff from adequately investigating the charges against him.**

Two of the issues raised by Plaintiff in the Complaint is that he was denied discovery in connection with the January 2004 hearing, and that he was ordered by Defendant Sicuso,

11

on pain of further and additional discipline, not to contact potential witnesses. These two facts completely denied Plaintiff the right to pre-hearing discovery and substantially interfered with his right to investigate the charges against him or prepare a defense. At page 14 of his decision the Magistrate holds that the order prohibiting Plaintiff from contacting employees "was not so broad." The Magistrate held that Plaintiff was represented by counsel, and the order did not bar counsel's investigation into the facts. The factual assumption being made by Magistrate Sorokin is premature.

Without being able to engage in discovery and take depositions, there is no basis upon which the Magistrate could find that the "Stay Away Order" issued to Mr. Chmielinski would have allowed his counsel to contact Mr. Chmielinski's coworkers to investigate the allegations at issue.

**III.   CONCLUSION**

For all of the foregoing reasons, it is respectfully requested that the Court decline to accept the Report and Recommendation on Defendants' Motion to Dismiss as to all of the Counts in the Complaint, that the Motion to Dismiss be denied in all respects, and that this matter be scheduled for a Status Conference.[5]

>                Respectfully submitted,
>                ANDREW CHMIELINSKI
>                By his attorney,
>
>                /s/Mitchell J. Notis
>                _____
>                MITCHELL J. NOTIS, BBO# 374360
>                *Law Office of Mitchell J. Notis*
>                370 Washington Street
>                Brookline, MA 02445
>                Tel: 617-566-2700

---

[5] Should the Court decline to dismiss Counts I and II of the Complaint, Plaintiff requests that the Magistrate's recommendation (contained at page 9 n.3) that Plaintiff be permitted to amend his Complaint to add claims for injunctive relief against the individual defendants in their official capacities, be allowed.

12

CERTIFICATE OF SERVICE

I, Mitchell J. Notis, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and that paper copies will be sent to any non-registered participants as indicated in the Notice of Electronic Filing, this 5th day of January, 2007.

/s/Mitchell J. Notis

_____
MITCHELL J. NOTIS, BBO# 374360
Law Office of Mitchell J. Notis
370 Washington Street
Brookline, MA 02445
Tel: 617-566-2700